579 F.Supp. 172 (1984)
Francine STREICH, Pennsylvania Institute for Community Affairs, Jon Kest, Association of Community Organizations for Reform Now, Plaintiffs,
v.
PENNSYLVANIA COMMISSION ON CHARITABLE ORGANIZATIONS; Leroy Zimmerman, Attorney General of the Commonwealth of Pennsylvania, William Davis, Patricia Crawford, Arthur McDermott, Jonathan Vipond, James Farley, Ronald Petrick, John Dalsimer and James Maxey, III, Defendants.
Civ. A. No. 81-1031.
United States District Court, M.D. Pennsylvania.
January 31, 1984.
*173 *174 Stephen R. Bachmann, Bachmann, Weltchek & Powers, New Orleans, La., for plaintiffs; Stuart S. Sacks, Harrisburg, Pa., of counsel.
Marybeth Stanton, Deputy Atty. Gen., Chief, Civ. Litigation, Harrisburg, Pa., for defendants.

MEMORANDUM
HERMAN, District Judge.

I. BACKGROUND
This case was initiated by the filing of a Complaint on September 8, 1981. The Plaintiffs alleged, essentially, that the Pennsylvania Solicitation of Charitable Funds Act, 10 P.S. §§ 160-1 et seq., (hereafter "the Act") is unconstitutional. A request for a preliminary injunction was denied on October 21, 1981. 523 F.Supp. 1377. The action was subsequently, stayed pending the Pennsylvania Supreme Court's decision in Commonwealth of Pennsylvania v. Association of Community Organizations for Reform Now, 502 Pa. 1, 463 A.2d 406 (1983). That decision recognized that the Association of Community Organizations for Reform Now (hereafter "ACORN") is a charity subject to the provisions of the Act. Plaintiffs have since renewed their motion for summary judgment. The motion is now before the court.
The Act in question is intended "not only to require proper registration of charitable organizations, professional fundraisers and professional solicitors but also to regulate the soliciting of money and property by or on behalf of charitable organizations, professional fund-raisers, professional solicitors and to require proper accounting for the use and distribution of said funds." 10 P.S. § 160-1.1. It is enforced by a seven-person Commission on Charitable Organizations (hereafter "Commission") which has the authority to promulgate rules and regulations consistent with the provisions of the Act. 10 P.S. § 160-5. The Act applies to all charitable organizations which intend to solicit contributions within the Commonwealth. 10 P.S. § 160-3. Such charities must, annually, file a registration form setting forth certain required information. Additionally, a registration fee of $10, $25, or $100 is required. 10 P.S. § 160-3(d).
The Commission possesses discretionary authority in several instances. It may require that an audit be submitted by the charity. Investigations of applicants may be conducted if the Commission deems it necessary. The Commission may, upon a showing of special facts or circumstances, waive the provisions of § 160-5(a) which limits the amount a charity may pay to a professional solicitor to 15% of the contributions received. 10 P.S. § 160-6(a.1). The Commission also has considerable enforcement discretion.
Violations of the Act may result in revocation or denial of a charity's registration. Additionally, criminal sanctions may be imposed for willful violations of the Act. 10 P.S. § 160-14.
The Plaintiffs, here, are charitable organizations and solicitors for the organizations. *175 They recognize that the Act applies to any fund-raising which they might choose to undertake. They believe, however, that the provisions of the Act are unduly burdensome and in violation of their First Amendment rights. They do not wish to comply with the statutory requirements. Rather than risk the potential criminal liability involved in willful violations of the Act, the Plaintiffs now challenge the Defendants' right to enforce the law. The Plaintiffs argue that the Act violates the United States Constitution in at least eight ways. Since we agree that no material factual issue remains in this case, we agree that summary judgment is appropriate. We will, therefore, address Plaintiffs' contentions to decide whether the Act is indeed unconstitutional.

II. DISCUSSION
Plaintiffs, initially, point out that the solicitation activities at issue are clearly protected by the First Amendment. We agree. The Supreme Court, in Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980), held that charitable solicitations in residential neighborhoods are clearly within the protections of the First Amendment. Statutes regulating such speech must be narrowly drawn, and may not invest undue discrimination in enforcement officials. Grayned v. Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Nevertheless the Supreme Court has also:
... consistently recognized a municipality's power to protect its citizens from crime and undue annoyance by regulating soliciting and canvassing. A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interest without running afoul of the First Amendment.
Hynes v. Mayor of Oradell, 425 U.S. 610, 616-617, 96 S.Ct. 1755, 1758-1759, 48 L.Ed.2d 243 (1976). The reasoning of the Court would clearly apply to laws enacted by states to also serve the interests recognized in Hynes. These basic principles, then, form the background for the Plaintiffs' specific challenges to the Act. Each of the Plaintiffs' arguments will now be addressed.
First, Plaintiffs allege that 10 P.S. § 160-3(f)(6), allowing disapproval of an application if the "activities to be financed will be incompatible with the health, safety or welfare of the citizens of the Commonwealth of Pennsylvania," is unconstitutionally vague and an undue delegation of discretion. They cite, primarily, Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) to support their position. In Shuttlesworth, the Supreme Court determined that a local parade ordinance which allowed a commission to deny a parade permit if "in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused," served to confer virtually unbridled and absolute power upon the commission to determine who was allowed to march. Here, the statutory language of 10 P.S. § 160-3(f)(6) grants similar authority to the Pennsylvania Commission.
No ordinance or statute may grant unbridled discretion to an individual or group to determine limitations on freedom of speech. Rather, a "law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Shuttlesworth, at 150-151, 89 S.Ct. at 938-939. This is necessary since such licensing involves a prior restraint of speech. While we accept the state's proposition that a prior restraint of organizations which desire to solicit funds from the citizens of a state may be justified by a substantial state interest in protecting its citizens from unscrupulous charities and soliciting,[1] we also recognize the need for narrow *176 and clear standards of enforcement. Here, the phrase "incompatible with the health, safety or welfare of the citizens of the Commonwealth" is extremely broad and open to considerable interpretation and discretionary application. We believe that the language in question is sufficiently indefinite that persons of reasonable intelligence "must necessarily guess at its meaning," Broadrick v. Oklahoma, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973), and that the discretionary power conferred on the Commission is overly broad and unrestrained. Supporting this conclusion are cases ruling that similar guidelines are unconstitutionally vague. See Southeastern Promotions v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), ("best interests of the community" standard held vague); Shuttlesworth v. City of Birmingham, supra, 394 U.S. at 149, 89 S.Ct. at 938 ("public welfare, peace, safety, health, decency, good order, morals or conscience" standard held vague); Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115 (1st Cir.1981), ("legitimate protectible interests of ... affected citizens" standard held vague).
While the Plaintiffs have not alleged any arbitrary or capricious enforcement of § 160-3(f)(6), they may, however, attack the validity of the statute since application of § 160-3(f)(6) would substantially abridge the First Amendment rights of other parties not before the court. Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); Grayned v. City of Rockford, 408 U.S. 104, 114-121, 92 S.Ct. 2294, 2302-2306, 33 L.Ed.2d 222 (1972). In Schaumburg, the Court stated that:
In these First Amendment contexts, the courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute.
Id., 444 U.S. at 634, 100 S.Ct. at 834. Plaintiffs then, are not barred from challenging the validity of § 160-3(f)(6) merely because the Commission has yet to arbitrarily exercise its discretion with respect to Plaintiffs. We will grant Plaintiff's motion for summary judgment on this issue.
Second, Plaintiffs argue that 10 P.S. § 160-6(a)[2] improperly places a ceiling on payments to First Amendment solicitors. Plaintiffs' Brief, at 4. We disagree. In Schaumburg, the Supreme Court ruled that a local ordinance requiring 75% of solicitations to be "used directly for the charitable purpose of the organization" was unconstitutional. The Court pointed out that some charitable organizations act, primarily, not to provide money or services to the poor, but to gather, disseminate, and advocate positions of public concern. Id., at 635, 100 S.Ct. at 835. These organizations necessarily combine solicitation and the dissemination, discussion, and advocacy of public issues. They must hire employees to research and process the information needed to develop the positions asserted by the organization. Hence, this type of charitable organization would necessarily budget a far larger amount of solicitations toward administration than "traditional" *177 charities. Consequently, such an ordinance invalidly limited the First Amendment rights of the "different" charities, without acceptable justification.
The statute in question here is similar yet distinctively different from the one in question in Schaumburg. Here, only payments to professional solicitors are regulated, not administrative expenses in general. We agree with Defendants that this distinction is critical. The 85% of contributions which must go to the charitable purpose, under the statute, does not significantly affect the First Amendment rights of the charities since the 85% can be spent to further the charity regardless if it is a "traditional" one or one which emphasizes dissemination of ideas and positions. Only the use of funds for solicitation is regulated. We do not believe that a 15% limitation on funds paid solely to professional solicitors unconstitutionally restricts the First Amendment rights of Plaintiffs. Additionally, any limited impingement present is justified by the significant state interests previously discussed. We, therefore, will deny summary judgment for Plaintiffs on this issue, and grant judgment in favor of Defendants.
Third, Plaintiffs believe that 10 P.S. § 160-3(d)[3] is unconstitutional since it is essentially a tax based upon the money brought in by solicitations. They argue that the amount paid in registration fees is relative to the amount solicited, and, since soliciting is a protected First Amendment activity, the fee serves to tax that First Amendment activity. We disagree.
While the exercise of Constitutionally protected activities may not be taxed, Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), it may be regulated. Nominal fees imposed to defray the costs of policing the activities in question are allowed. The amount of such fees must, of course, bear a reasonable relationship to the costs of regulation. Id., at 114, 63 S.Ct. at 875.
Here, the fees imposed upon solicitation are clearly nominal and substantially related to the costs of supervising and policing the charities. The fees, while different in amount depending upon the amount solicited, are set in a manner relative to the costs of enforcement. Since more effort is required to review and police the charities with more detailed and complex statements, a greater fee is required. Defendants argue that "the legislature has made a rough approximation between the annual registration fee and the cost of processing a charity's registration and financial information. While the correlation between fee and cost may not be exact in all situations, it is nonetheless a reasonable correlation based on the cost of enforcing the statute." Defendants' Brief, at 17. Plaintiffs do not refute this contention and we see no grounds to reject it. We believe that the fees are reasonable in light of required enforcement procedures. Summary judgment will be granted in favor of Defendants on this issue.
*178 Fourth, Plaintiffs argue that 10 P.S. § 160-3(a)(6),[4] which requires disclosure of financial information, is an undue intrusion into the charity's internal financing operations. We cannot agree. The state has a legitimate and substantial interest in regulating unscrupulous and dishonest charities. The intrusion resulting from the statute in question is minimal and essential to regulation. The statute does not require disclosure of the names of contributors or of members. Rather, the information sought appears to be purely financial in nature and clearly relevant to supervision of solicitation.
The Plaintiffs have offered nothing to support their contention that the financial affairs of a charitable organization are free from examination. Indeed, no organization, whether incorporated or unincorporated, has an unqualified right to conduct their affairs in secrecy. California Bankers Ass'n v. Schultz, 416 U.S. 21, 66-67, 94 S.Ct. 1494, 1519-1520, 39 L.Ed.2d 812 (1974). We believe, as the Supreme Court did in California Bankers, that the statute in question does not impose unreasonable reporting requirements on the Plaintiffs. We, therefore, will grant summary judgment in favor of Defendants on this issue.
Fifth, Plaintiffs argue that 10 P.S. § 160-3(f)[5] is unconstitutionally vague and grants undue discretion to the commission. We cannot agree. While the clause in question appears to grant considerable discretion to the Commission, we must recognize the need of the Commission to possess such discretion. To investigate all charities would be financially and practically irresponsible. Similarly, to investigate no charities and to rely merely upon the information provided by the charities would be equally irresponsible. Rather, the Commission has been clothed with the power to investigate "any applicant as it shall deem necessary." Crucial to this phrase is the term "necessary." Necessary refers to action absolutely needed to accomplish a certain result; conduct which is essential, or indispensable. Given this construction, we cannot see how the Commission is granted undue discretion. It may only investigate applicants when such investigation is reasonably necessary to meet the goals and purposes of the Act. Since § 160-3(f) is capable of construction and application within Constitutional limits, we cannot say that it is unconstitutional on its face.
Further, Plaintiffs have not alleged any unconstitutional applications of § 160-3(f) to them or any other charity. No indication of any investigation of Plaintiffs is apparent in the record. Only if the clause is applied in a discriminatory or constitutionally unwarranted manner would this court see grounds to further restrict the Commission's discretion beyond the statutory language. Until such time, we will not declare § 160-3(f) unconstitutional. Therefore, judgment will be granted in favor of Defendants on this issue.
Sixth, Plaintiffs believe that 10 P.S. §§ 160-3(f)(4) and 3(f)(5) unconstitutionally limit administrative expenses to 35% of the funds raised by a charity. They argue that the Schaumburg decision ended any possibility of state ceilings on how solicited funds are spent. Defendants disagree and point out substantial differences in the section at issue and the one considered in Schaumburg. Two major differences are apparent: (1), §§ 160-3(f)(4) and (5) refer only to limits on spending for soliciting and fundraising, not to general administrative costs; and (2), §§ 160-3(f)(4) *179 and (5) provide for waiver of the limitations of excess spending is not unreasonable.
While we do not see a crucial distinction between whether the state limits spending for administrative as opposed to soliciting activities, since both seem to be protected under the First Amendment, we do believe that the waiver provision is critical. Such a clause serves to protect the Plaintiff's rights while also protecting the interests of the state in regulating unscrupulous charities. The clause results in the 35% limitation being, essentially, a guideline. While it sets a limit considerably higher than the ordinance discussed in Schaumburg, and applies only to the narrower category of fundraising (as opposed to administrative) expenses, the statute also allows waiver if the additional expenditures were not unreasonable. We do not believe that the intrusion, by these sections, into First Amendment rights is substantial or unwarranted. The state has employed an appropriate means of supervision which is not impermissible.
Similarly, the standard to be applied by the Commission, that of reasonableness, is not overly broad or vague. While what is reasonable may vary from case to case, the standard does not. "Unreasonable" may not be capable of precise and unalterable definition. It refers to conduct which is irrational, foolish, unwise, absurd, silly, preposterous, senseless, stupid, immoderate, exorbitant, etc. Blacks Law Dictionary 1379 (Fifth Ed.1979). Admittedly, each of these terms also cannot be precisely defined or pinpointed either. Yet, the law must rely upon words, not mathematical equations. The issue is not whether the language sets forth a formula by which facts are plugged in and an answer etched in stone thrown out. Rather, the issue is whether a person of ordinary intelligence can understand the meaning and foresee application of the clause in question. We believe that § 160-3(f)(4) and (5) meet the criteria set forth in Grayned and Hynes. The language is readily understandable. Upon a showing of a reasonable basis for expenses over the 35% limit, the Commission has discretion to allow the expense. Such discretion obviously, however, must not be exercised in an arbitrary, capricious or discriminatory manner. We will grant summary judgment in favor of Defendants on this issue.
Seventh, Plaintiffs argue that 10 P.S. § 160-6 is unconstitutional for the same reasons as 10 P.S. §§ 160-3(f)(4) and (5). We agree with Plaintiffs that the result and rationale are therefore substantially identical. This section is not unconstitutional on its face. Unconstitutional application may occur if the discretion allowed is exercised in an arbitrary, capricious, or discriminatory manner. Until such time, we see no reason to declare this section unenforceable. We will grant summary judgment in favor of the Defendants on this issue.
Eighth, the Plaintiffs argue that 10 P.S. § 160-4, allowing exclusion from the act of different classes of charitable organizations, denies the Plaintiffs equal protection. Defendants respond by pointing out that the exclusions are rationally based and therefore valid. We believe that, since the Act involves potential limitations on First Amendment freedoms, a higher degree of scrutiny must be applied. Even under the strictest scrutiny, however, we believe that § 160-4 withstands challenge. Most of the organizations excluded are regulated by other state laws. To duplicate supervision would be wasteful and counterproductive. The Act is designed to regulate certain organizations not otherwise already regulated. We find nothing unconstitutional in excluding these organizations from the provisions of the Act.
Additionally, local organizations not hiring professional solicitors are exempt. These organizations are, facially, completely different from the organizations which the Act seeks to regulate. The Act is designed to protect the public from organizations hiring professional solicitors who may or may not be interested in the charity for whom they solicit. To include within the coverage of the Act organizations who do not pay their fundraisers would be absurd. We believe that the exclusions from the Act are directly and substantially related *180 to the purpose and enforcement of the Act. We will grant summary judgment in favor of the Defendants on this issue.
Finally, the Defendants point out that the Act is capable of a severable construction. This observation is important since we have determined that only one part of the Act is unconstitutional. We agree with Defendants that 1 Pa.C.S. § 1925 allows severance of any parts of statutes found to be unconstitutional. Since Plaintiffs have offered no basis for holding otherwise, and our research indicates that the Defendants are correct, we will sever 10 P.S. § 160-3(f)(6) from the remainder of the Act.

III. CONCLUSION
The Pennsylvania Solicitation of Charitable Funds Act meets, in most respects, the Due Process requirements of the Constitution. Although First Amendment rights are impinged slightly by the Act, the intrusion is minimal and consistent with substantial state interests. Charitable organizations are aware, under the Act, of their responsibilities. We do not believe that the Act, outside of § 160-3(f)(6), is vague or overly broad. We, therefore, will grant summary judgment in favor of Defendants on all issues except for the constitutionality of § 160-3(f)(6).
An appropriate order will be entered.
NOTES
[1] Justice Black, in Martin v. Struthers, 319 U.S. 141, 144, 63 S.Ct. 862, 864, 87 L.Ed. 1313 (1943), described the interest at issue: Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit .... In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. Crime prevention may thus be the purpose of regulatory ordinances.
[2] 10 P.S. § 160-6(a) states: "No charitable organization shall pay or agree to pay to a professional solicitor or his agents, servants or employes in the aggregate a total amount in excess of fifteen per cent (including reimbursement for expenses incurred and direct payment of expenses incurred) of the actual contributions received."
[3] § 160-3(d) states:

(d) Every charitable organization which submits a short form registration statement pursuant to section 4(b)1 or receives less that fifteen thousand dollars ($15,000) in gross contributions shall pay an annual registration fee of ten dollars ($10). Every charitable organization which submits a full registration statement to the department shall pay an annual registration fee of twenty-five dollars ($25) if the charitable organization solicits and receives gross contributions from the public which exceed fifteen thousand dollars ($15,000) but are less than twenty-five thousand dollars ($25,000) during the immediate preceding fiscal year. Every charitable organization which submits a full registration statement to the department shall pay an annual registration fee of one hundred dollars ($100) if the charitable organization solicits and receives gross contributions in excess of twenty-five thousand dollars ($25,000) during the immediate preceding fiscal year. A parent organization filing on behalf of one or more chapters, branches or affiliates and a federated fund-raising organization filing on behalf of its member agencies shall pay a single annual registration fee for itself and such chapters, branches, affiliates or member agencies included in the registration statement.
[4] 10 P.S. § 160-3(a)(6) states: "A copy of a balance sheet and income and expense statement audited by an independent public accountant for the organization's immediately preceding fiscal year, or a copy of a financial statement audited by an independent public accountant covering in a consolidated report, complete information as to all the preceding year's fundraising activities of the charitable organization, showing kind and amount of funds raised, costs and expenses incidental thereto, and allocation or disbursement of funds raised."
[5] The relevant part of § 160-3(f) states: "Upon receipt of a request from the Secretary of the Commonwealth or upon its own initiative the commission shall make or cause to be made such investigation of any applicant as it shall deem necessary."