**Francis X. BELLOTTI, as he is Attorney General of the Commonwealth of Massachusetts, Plaintiff,**

v.

**TELCO COMMUNICATIONS, INC. and Donald Quatrucci, Defendants.**

**TELCO COMMUNICATIONS, INC., Plaintiff,**

v.

**Francis X. BELLOTTI, as he is Attorney General of the Commonwealth of Massachusetts, Defendant.**

Civ. A. Nos. 86–1461–C, 86–1472–C.

United States District Court, D. Massachusetts.

Dec. 31, 1986.

Leslie G. Espinoza and Joanne E. Farrell, Asst. Attys. Gen., Div. of Public Charities, Public Protection Bureau, Boston, Mass., for plaintiff.

Peter S. Brooks, Goldstein & Manello, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action presents a facial challenge to the constitutionality of section 21 of the Massachusetts Charitable Solicitation Act, M.G.L. c. 68 § 21 ("section 21"), which limits a professional solicitor's compensation to twenty-five percent of any moneys raised.[1] The matter is now before the

1. M.G.L. c. 68 § 21, recently amended by St. 1985, c. 790 § 1, provides in relevant part that:

Court on cross motions for summary judgment, one filed by the Massachusetts Attorney General, to compel Telco Communications Inc. ("Telco") and Donald Quatrucci to comply with the requirements of section 21, and the other filed by Telco challenging the constitutionality of section 21 under the First and Fourteenth Amendments to the United States Constitution.[2] The parties entered into a stipulation, which was entered by this Court as a permanent injunction on July 28, 1986, resolving all the pending issues except for the constitutional question now before the Court.[3]

The Attorney General makes three arguments in support of the compensation limitation in section 21. First, he argues that section 21 is an economic regulation of for-profit businesses which does not infringe on the First Amendment rights of charitable organizations or of professional solicitors. The Attorney General further argues that the decision of the United States Supreme Court in *Secretary of State of Maryland v. Munson*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), which invalidated a statutory provision limiting the amount charities may expend on fundraising, did not foreclose the use of statutory limits on the compensation received by professional solicitors. He also contends that, even if section 21 does affect charities' First Amendment rights, it is narrowly drafted to permissibly limit their conduct and not the content of their speech. Finally, the Attorney General asserts that

section 21 promotes the Commonwealth's compelling interest in preserving the public's confidence in charitable solicitations, as well as in protecting donors and donees from corrupt solicitation procedures.

Telco challenges the constitutionality of section 21 on two grounds. Telco argues that charitable solicitations are protected First Amendment activities and that the compensation limit in section 21 impermissibly places a direct and substantial restriction on those activities. Telco argues further that the Attorney General fails to advance a state interest sufficient to justify such a restriction.

Telco is a Rhode Island corporation engaged in the business of providing professional fundraising services to various organizations for a fee.[4] Telco entered into a contract with two Massachusetts unions, the I.B.P.O. Local 876 Holbrook Police Union ("the Holbrook Union") and the Franklin Police Patrolmen's Union ("the Franklin Union"). The contract called for Telco to publish and distribute educational handbooks to the public. Telco solicited contributions from local businesses in exchange for the placement of their advertising in the handbooks. Telco's contract with the Holbrook Union provides that Telco would publish and distribute 1,000 copies of a localized publication entitled "The Emergency Handbook Guide." Under the contract, the Holbrook Union was to receive thirty percent, or $6,000, whichever was greater, from the advertising revenue col-

---

(a) No professional solicitor ... shall receive compensation which in the aggregate amounts to a total in excess of twenty-five percent of the total moneys ... raised or received by reason of any solicitation activities....

M.G.L. c. 68 § 21.

**2.** There is no dispute that Telco has standing to challenge the statute based on the doctrine of *jus tertii* standing. *Secretqary of State of Maryland v. Munson*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984).

**3.** In the matter of *Bellotti v. Telco Communications, Inc.*, C.A. No. 86–1461–C (July 28, 1986), this Court enjoined Telco from: (a) failing to submit its charitable solicitations contracts to the Division of Public Charities; (b) failing to comply with M.G.L. c. 68, except c. 68 § 21, if

Telco engages in charitable solicitations; and (c) failing to disclose in its fundraising activities certain information required by M.G.L. c. 68.

**4.** It is not disputed that Telco is a professional solicitor within the meaning of M.G.L. c. 68 § 18. The statute distinguishes between a "professional solicitor" and "a professional fund-raising counsel." A professional fund-raising counsel solicits no contributions, but is "any person who is retained ... to advise or act as a consultant ... in connection with the solicitation of contributions.... It is not disputed that Telco acted as professional solicitor, defined as "any person who is retained ... by a charitable organization to solicit in this commonwealth contributions for charitable purposes....

lected by Telco. The Holbrook Union agreed to pay Telco thirty percent of this revenue as compensation and forty percent as reimbursement for expenses. The terms of Telco's contract with the Franklin Union for publication of the "Save-A-Life Series Handbook Guides" provide that the Franklin Union was to receive thirty-three percent of the advertising revenue collected. The Franklin Union agreed to pay Telco thirty-three percent as compensation and thirty-four percent as reimbursement for expenses.

On the basis of these contracts, the Attorney General notified Telco and Donald Quatrucci by letter that, unless they complied with M.G.L. c. 68 § 21, he would bring an action against them pursuant to M.G.L. c. 68 § 32.[5] In response, Telco commenced an action seeking a declaratory judgment that section 21 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Both actions are now consolidated in this Court.

The issue before the Court is whether section 21, which imposes a non-waivable percentage limitation on the compensation of professional solicitors, is an allowable economic regulation of the solicitor, or whether it impermissibly intrudes on the free speech rights of charitable organizations.[6] To determine the constitutionality of section 21, our inquiry is twofold: 1) whether section 21 restricts rights that are protected by the First Amendment, *Citizens For A Better Environment v. Schaumburg*, 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); *U.S. reh'g denied*, 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980); and 2) if yes, whether the restriction is permissible because it is narrowly drafted and enacted to promote a compelling state interest. *Munson*, 467 U.S. at 960–61, 104 S.Ct. at 2849.

In recent years the United States Supreme Court twice considered and twice rejected regulations that the Court determined were impermissible infringements on the First Amendment rights of charitable organizations to solicit funds. In *Schaumburg*, the Court struck down a municipal ordinance prohibiting door-to-door or on-street solicitations by charities that could not demonstrate that seventy-five percent of the funds raised were expended for charitable purposes. The Court noted that charitable solicitations are unquestionably within the ambit of the First Amendment's protection since they "involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes...." *Schaumburg*, 444 U.S. at 632, 100 S.Ct. at 833. The Court recently affirmed that view in *Munson*, 467 U.S. at 959–60, 104 S.Ct. at 2848–49, where the Court struck down a state statute similar to the one at issue in *Schaumburg* notwithstanding the fact that the statute's twenty-five percent limit on revenues that could be expended by charities on fundraising was waivable if "it would effectively prevent the charitable organization from raising contributions." *Munson*, 467 U.S. at 950–51, n. 2, 104 S.Ct. at 2843–44 n. 2, *quoting* 1984 Md. Laws, ch. 787.

The Attorney General argues that reliance on the *Schaumburg* and *Munson* decisions in this case is inappropriate because both of those cases involved provisions aimed at limiting expenditures of charitable organizations whereas here, section 21 is aimed at regulating professional solicitors. Indeed, the Attorney General asserts that charities may spend as much of their revenue as they desire for fundraising activities without running afoul of section 21. The Attorney General thus concludes that section 21 is an economic regulation that does not require strict scru-

---

**5.** M.G.L. c. 68 § 32(e) permits the Attorney General to bring an action against "any charitable organization ... [or] professional solicitor" if there is reason to believe that such persons are "operating in violation of the provisions of sections eighteen to thirty-five...."

**6.** There is no dispute that the Franklin Union and Holbrook Union hold themselves out as charitable organizations within the meaning of M.G.L. c. 68 § 18.

tiny but rather must be shown to serve a strong state interest unrelated to speech restriction and to have only an incidental affect on free speech. *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968); *U.S. reh'g denied,* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

As support for this view, the Attorney General relies primarily on *Streich v. Pennsylvania Commission On Charitable Organizations,* 579 F.Supp. 172 (M.D.Pa. 1984), a case decided before *Munson,* in which the court upheld the constitutionality of a Pennsylvania statute imposing a fifteen percent compensation limit on professional solicitors. In *Streich,* the court distinguished the statute at issue from the ordinance in *Schaumburg* because "only payments to professional solicitors are regulated, not administrative expenses in general." *Streich,* 579 F.Supp. at 177. The court in *Streich* acknowledged that even though the statute placed restrictions on charities' protected First Amendment rights, *Id.* at 175, 177, such restrictions were permissible because only the funds paid solely to professional solicitors were regulated. *Streich,* 579 F.Supp. at 176–77. In addition the court recognized a significant state interest in protecting the public from unscrupulous solicitations campaigns. *Id.*

Telco argues that the ruling in *Streich* does not survive the Court's decision in *Munson* since the Court noted that "concerns about unscrupulous professional fundraisers, like concerns about fraudulent charities, can and are accommodated directly, through disclosure and registration requirements and penalties for ·fraudulent conduct." *Munson,* 467 U.S. at 967–68, n. 16, 104 S.Ct. at 2853, n. 16. Telco contends that any restriction placed on the compensation of professional solicitors necessarily limits charitable organizations' options in undertaking fundraising programs. Numerous factors could result in high fundraising costs, including the fact that "charities often are combining solicitation with dissemination of information, discussion, and advocacy of public issues...." *Mun-*

*son,* 467 U.S. at 961, 104 S.Ct. at 2849. The cost of hiring a professional solicitor is thus one cost to be factored into a charitable organization's fundraising budget. Telco maintains that the link between small charities and professional solicitors is a vital one and that section 21 impermissibly weakens it by imposing a direct and substantial limitation on the amount a charity is allowed to compensate its solicitors. I agree. The twenty-five percent compensation limitation in section 21 is, in effect, the other side of the same coin that was invalidated by the Court in *Munson.* The Attorney General concedes that, after *Munson,* it is impermissible to prohibit charities from choosing to spend more than twenty-five percent of revenues raised on professional fundraisers. Accordingly, a charitable organization's fundraising scheme, including its decision to pay whatever it chooses to a professional solicitor, is also a right "so intertwined with speech that [it is] entitled to the protections of the First Amendment." *Munson,* 467 U.S. at 959, 104 S.Ct. at 2848. Such a decision by a charity would currently require it to violate the law and subject it to penalties and/or imprisonment. M.G.L. c. 68 § 32(d).

▆▆▆▆ Rights protected by the First Amendment may be regulated if the regulation serves a sufficiently strong state interest, *Munson,* 467 U.S. at 961, 104 S.Ct. at 2849, and is narrowly drawn to serve that interest "without unnecessarily interferring with First Amendment freedoms." *Munson,* 467 U.S. at 961, 104 S.Ct. at 2849, *quoting Schaumburg,* 444 U.S. at 637, 100 S.Ct. at 836. Ordinarily, the burden of proving the legitimacy of a statute challenged on First Amendment grounds rests on the statute's proponent. *Organization For A Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *Massachusetts Fair Share, Inc. v. Town of Rockland,* 610 F.Supp. 682, 685 (D.Mass.1985). In his memorandum, the Attorney General contends that section 21 is an economic regulation enacted with the dual purpose of protecting donors and donees, and of promoting the public's percep-

tion of the integrity and efficiency with which charitable funds are raised and used. Telco argues that the statute's public disclosure and registration requirements are sufficient to prevent any deceptive practices that could erode public confidence in charitable solicitations and that these provisions do not interfere unnecessarily with First Amendment rights.[7] I agree. While the Commonwealth's interest is a legitimate one, there is an insufficient showing that section 21 is appropriately tailored to further that interest. Percentage limitations on charities' fundraising expenditures are too imprecise a tool to protect the public from fraud. *Munson,* 467 U.S. at 967–68, 104 S.Ct. at 2853. Similarly, there is here no precise connection between limiting solicitors' compensation and preserving public confidence in charitable solicitation. The Commonwealth's interest can be and is furthered by means less intrusive on First Amendment freedoms. *Schaumburg,* 444 U.S. at 636, 100 S.Ct. at 835.

■ After a hearing and after consideration of the arguments presented by both parties, I rule that section 21 of the Massachusetts Charitable Solicitations Act, M.G.L. c. 68 § 21, places unconstitutional restrictions on the protected First Amendment activities of charitable organizations and that there are less restrictive means available to accomplish the Commonwealth's legitimate interest in protecting public confidence in charitable solicitations. Accordingly, I rule that Telco's motion for summary judgment should be granted and the Attorney General's motion for summary judgment should be denied.

Order accordingly.

---

**7.** Professional solicitors are required to file copies of contracts with the Division of Public charities. M.G.L. c. 68 § 22. Professional solicitors are required to disclose information regarding solicitations procedures, including the minimum percentage of the revenue raised that will be used for charitable purposes. M.G.L. c. 68 § 23. Professional solicitors are also required to register with the Division of Public Charities and to file annual financial reports. M.G.L. c. 68 §§ 24; 25, 26.

    The anti-fraud provisions of the Act provide in relevant part that:

      [n]o person shall, in connection with the solicitation of contributions ... misrepresent to or mislead anyone by any manner, means, practice or device whatsoever to believe that the person on whose behalf such solicitation or sale is being conducted is a charitable organization or that the proceeds of such solicitation or sale will be used for charitable purposes if such is not the fact.

M.G.L. c. 68 § 28(b).

    The Act also provides that foreign solicitors are deemed to be subject to service of process within the Commonwealth. M.G.L. c. 68 § 31. Violators of the act are subject to fines and/or imprisonment. M.G.L. c. 68 § 32(d). The Attorney General is authorized to bring enforcement actions pursuant to the Act. M.G.L. c. 68 § 32(e).