James M. SHANNON, As He is Attorney General of the Commonwealth of Massachusetts, Plaintiff, Appellant,

v.

TELCO COMMUNICATIONS, INC. and Donald Quatrucci, Defendants, Appellees.

No. 87–1054.

United States Court of Appeals, First Circuit.

Argued June 3, 1987.

Decided July 31, 1987.

Johanna Soris, Asst. Atty. Gen., Division of Public Charities, Public Protection Bureau, with whom Leslie G. Espinoza, Asst.

Atty. Gen., Division of Public Charities, Public Protection Bureau, and James M. Shannon, Atty. Gen., were on brief, for plaintiff, appellant.

Peter S. Brooks with whom Louis J. Scerra, Jr. and Goldstein & Manello were on brief, for defendants, appellees.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

BREYER, Circuit Judge.

Telco is a private Rhode Island corporation that raises funds for charities. The Attorney General of Massachusetts sued Telco in a Massachusetts court, claiming that Telco had violated a Massachusetts law that says that a "professional solicitor" (such as Telco) may not "receive compensation" that exceeds "twenty-five per cent of the total moneys, pledges or other property raised or received by reason of any [charity-related] solicitation activities." Mass. Gen.L. c. 68, § 21 (1984). Telco then brought suit in federal district court, seeking a declaratory judgment that this statutory provision violates its first amendment rights. On Telco's motion, the district court removed the Commonwealth's state enforcement action and consolidated it with Telco's federal declaratory judgment action. Ruling on cross-motions for summary judgment, the district court held that the Massachusetts statute was unconstitutionally overbroad and invalid on its face. *Bellotti v. Telco Communications, Inc.*, 650 F.Supp. 149 (D.Mass.1986). The court found the statute to be indistinguishable from a similar Maryland statute that the Supreme Court held to be invalid under the first amendment in *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). The Commonwealth appeals this ruling.

■ Before considering the merits, we must address a technical issue. The Commonwealth claimed below that the district court should abstain from considering Telco's federal declaratory judgment action under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because the Commonwealth's enforcement proceeding was already pending in state court. Telco answered that no state proceeding was pending because the Commonwealth's suit had, on Telco's motion, been removed to federal court on the basis of diversity jurisdiction. As the Commonwealth correctly argued, however, its suit was not one between "citizens of different States," 28 U.S.C. § 1332 (defining the diversity jurisdiction of the district courts), but rather one brought "by a State against [a] citizen[ ] of another State," 28 U.S.C. § 1251 (defining the Supreme Court's original jurisdiction); *cf. Ohio v. Wyandotte Chemicals*, 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971) (holding that the Supreme Court has discretion to decline to exercise original jurisdiction over a suit brought by a state against a citizen of another state). And, " 'it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States' " and that such a suit does not lie within the district court's diversity jurisdiction. *State Highway Commission v. Utah Construction Co.*, 278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929) (quoting *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231, 487 (1894)); *see Ohio v. Wyandotte Chemicals*, 401 U.S. at 498 n. 3, 91 S.Ct. at 109 n. 3. Thus, the Commonwealth's enforcement action was not properly removed to federal court, *see* 28 U.S.C. § 1441 (allowing removal of suits "of which the district courts of the United States have original jurisdiction"), and the district court should (arguably) have abstained from hearing Telco's federal declaratory judgment action in deference to the (properly pending) state action.

The Commonwealth has not, however, pressed the abstention question before this court. In such circumstances, as the Supreme Court held in *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977), "[i]t may not be argued ... that a federal court is compelled to abstain...." The Court reasoned:

---

* Chief Judge of the United States Court of International Trade, sitting by designation.

If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system. In the present case, [the State] either believes that the District Court was correct in its analysis of abstention or, faced with the prospect of lengthy ... appeals followed by equally protracted state judicial proceedings, now has concluded to submit the constitutional issue to this Court for immediate resolution. In either event, under these circumstances *Younger* principles of equity and comity do not require this Court to refuse [the State] the immediate adjudication it seeks.

*Id.; accord Brown v. Hotel & Restaurant Employees Local 54,* 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 3184 n. 9, 82 L.Ed.2d 373 (1984); *Sosna v. Iowa,* 419 U.S. 393, 396, 95 S.Ct. 553, 555, 42 L.Ed.2d 532 n. 3 (1975). We therefore proceed to the merits of Telco's action seeking a declaratory judgment that the Massachusetts statute is unconstitutional under the first and fourteenth amendments.

■ Regarding the merits, we, like the district court, can find no relevant distinction between the case before us and *Munson. Munson* concerned a statute that forbade a "charitable organization" from paying "as expenses in connection with any fund-raising activity a total amount in excess of 25 percent of the total gross income raised or received by reason of the fundraising activity." Md.Ann.Code art. 41, § 103D(a), *quoted in Munson,* 467 U.S. at 950 n. 2, 104 S.Ct. at 2843 n. 2. In *Munson,* the Supreme Court pointed to an earlier case, *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), in which it had held unconstitutional a local ordinance banning solicitations by charities that do not use at least 75 percent of their receipts for charitable purposes. Such an ordinance, the Court had held, would improperly interfere with the charitable work of those "organizations that are primarily engaged in research, advocacy, or public education"—organizations that use "paid staff" or "paid solicitors who 'necessarily combine' the solicitation of financial sup-

port with the 'functions of information dissemination, discussion, and advocacy of public issues.'" *Id.* at 635, 636, 100 S.Ct. at 836 (quoting *Citizens for a Better Environment v. Village of Schaumburg,* 590 F.2d 220, 225 (7th Cir.1978)). Such charities might reasonably wish to pay their solicitors more than 25 percent of receipts in order both to raise money and to spread their word. The *Munson* Court concluded that the Maryland statute, which directly limited a charity's fundraising expenses, suffered the same constitutional defect as the ordinance in *Schaumburg* even though the Maryland statute provided for an administrative waiver of the spending limit if the charity could "demonstrate financial necessity." *Munson,* 467 U.S. at 962, 104 S.Ct. at 2850. The Court reasoned that both the Maryland statute and the Schaumburg ordinance would limit the fundraising activities of charities that educate or advocate. *See Munson,* 467 U.S. at 963–64, 104 S.Ct. at 2850–51; *Schaumburg,* 444 U.S. at 635, 100 S.Ct. at 835. In both cases, the state could pursue the law's ostensible objective of preventing fraud in less restrictive ways. *See Munson,* 467 U.S. at 968 n. 16, 104 S.Ct. at 2852 n. 16; *Schaumburg,* 444 U.S. at 637–38, 100 S.Ct. at 836–37. Therefore, both statutes, in the Court's view, were unconstitutionally overbroad. *See Munson,* 467 U.S. at 970, 104 S.Ct. at 2854. *Schaumburg,* 444 U.S. at 639, 100 S.Ct. at 837.

The Commonwealth attempts to distinguish the Massachusetts statute from the Maryland statute on the grounds that Massachusetts imposes limits on what professional fundraisers can *charge* the charities, whereas Maryland imposed a limit on what the charity could *spend* on fundraising, including what it could *pay* a fundraiser. This is a distinction without a difference. The Supreme Court majority in *Munson* replied to the dissent's claim that the Maryland statute sought primarily to control only the "economic relations between charities and professional fundraisers," *Munson,* 467 U.S. at 979, 104 S.Ct. at 2858 (Rehnquist, J., dissenting), as follows:

The dissenters' suggestion that, because the Maryland statute regulates only the economic relationship between charities and professional fundraisers, it is not a direct restriction on the charities' First Amendment activity is perplexing. Any restriction on the amount of money a charity can pay to a third party as a fundraising expense could be labeled "economic regulation." The fact that paid solicitors are used to disseminate information did not alter the *Schaumburg* Court's conclusion that a limitation on the amount a charity can spend in fundraising activity is a direct restriction on the charity's First Amendment rights. Whatever the State's purpose in enacting the statute, the fact remains that the percentage limitation is a direct restriction on the amount of money a charity can spend on fundraising activity.

For similar reasons, it is the dissent that "simply misses the point" when it urges that there is an element of "fraud" in a professional fundraiser's soliciting money for a charity if a high proportion of those funds are expended in fundraising. The point of the *Schaumburg* Court's conclusion that the percentage limitation was not an accurate measure of fraud was that the charity's "purpose" may include public education. It is no more fraudulent for a charity to pay a professional fundraiser to engage in legitimate public educational activity than it is for the charity to engage in that activity itself. And concerns about unscrupulous professional fundraisers, like concerns about fraudulent charities, can [be] and are accommodated directly, through disclosure and registration requirements and penalties for fraudulent conduct.

*Munson*, 467 U.S. at 967 n. 16, 104 S.Ct. at 2852 n. 16. Given this language and the theory of the Supreme Court's opinion in *Munson*, it is not surprising that those courts that have considered the issue since *Munson* have concluded that laws regulating the fees of professional charitable solicitors are not significantly different from laws regulating the expenditures of charities. *See National Federation of the Blind v. Riley*, 635 F.Supp. 256, 258 (E.D.

N.C.1986) ("A charitable organization does not lose the protection of the first amendment merely because it chooses to use a professional solicitor in its fund-raising campaign."), *aff'd*, 817 F.2d 102 (4th Cir. 1987); *Heritage Publishing Co. v. Fishman*, 634 F.Supp. 1489, 1504 (D.Minn.1986) ("Whether the statute limits what a charity may pay or what a professional fund-raiser may receive simply does not [a]ffect the impact that the limitation has on the free speech rights of the charity.").

The Commonwealth next argues that the Massachusetts statute is constitutional because it exempts from its 25–percent compensation limit "the actual cost ... of performances, events or goods sold to the public." Mass.Gen.L. c. 68, § 21(b). The Maryland statute rejected in *Munson*, however, contained an even broader exemption that covered the cost of "goods, food, entertainment, or drink sold *or provided* to the public" as well as postage and printing costs. Md.Ann.Code art. 41, § 103D(b) (emphasis added), *quoted in Munson*, 467 U.S. at 951 n. 2, 104 S.Ct. at 2843. The Massachusetts statute would seem to impose a greater burden on charities that educate or advocate than did the Maryland statute, for Massachusetts does not exempt the cost of printed matter *given* to the public, the cost of postage, or the cost of free fund-raising events. And, the Massachusetts statute, like the Maryland statute, fails to exempt the wages paid to door-to-door, on-the-street, or over-the-phone solicitors who spread the charity's educational message while asking for funds.

Finally, the Commonwealth argues that the Massachusetts statute is necessary to protect the public from fraudulent charities. But, this is the exact argument that the Supreme Court rejected in *Schaumburg* and *Munson*. The Court said that the state could control fraud "directly, through disclosure and registration requirements and penalties for fraudulent conduct." *Munson*, 467 U.S. at 968 n. 16, 104 S.Ct. at 2852 n. 16; *see Schaumburg*, 444 U.S. at 637–38, 100 S.Ct. at 836–27; *cf.* Mass.Gen.L. c. 68, §§ 22–26 (establishing extensive registration and disclosure re-

quirements); Mass.Gen.L. c. 68, § 28 (directly prohibiting fraudulent and deceptive practices); Mass.Gen.L. c. 68, §§ 30–32 (empowering state officials to penalize violations of registration, disclosure, and antifraud provisions).

In sum, because we can perceive no relevant distinction between this case and Supreme Court precedent directly on point, the judgment of the district court is

*Affirmed.*