**CENTER FOR AUTO SAFETY, INC.**

v.

**Tyras S. ATHEY, in his official capacity as Secretary of State of Maryland.**

**Civ. No. L–92–637.**

United States District Court,
D. Maryland.

Sept. 28, 1993.

Leslie A. Brueckner, and David C. Vladeck, Washington, DC, for plaintiff.

J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Alexander Wright, Asst. Atty. Gen., Baltimore, MD, for defendant.

## MEMORANDUM

LEGG, District Judge.

### I. INTRODUCTION

The State of Maryland, like numerous other states, imposes certain requirements on charitable organizations that use the mails to solicit funds within the state. *See generally* Md.Code Ann. art. 41 §§ 3–201 to 3–219 (the "Solicitation Law").

The Solicitation Law requires that charities that intend to solicit contributions within Maryland file an initial registration statement with the Maryland Secretary of State, and thereafter file annual reports. If a charity fails to comply with the law, the Secretary of State has a range of options, including 1) cancelling the registration of the violator, 2) summarily issuing a cease and desist order, 3) referring the matter to the Attorney General for civil enforcement, and/or 4) referring the matter to the appropriate State's Attorney for prosecution. *See* Solicitation Law § 3–214.

Prior to July 1, 1989, the Solicitation Law required every charity under its jurisdiction to pay a flat annual fee of $50.00.

Effective July 1, 1989, Maryland's legislature amended the Solicitation Law to provide for determining the annual fee a charity must pay by using a sliding-scale, based on the level of the charity's nationwide level of "public contributions." Solicitation Law § 3–202(g)(1).

Thus, charities that annually receive public contributions of less than $25,000 pay no fee. Those charities receiving contributions between $25,000 and $50,000 must pay an annual fee of $50.00. Charities receiving contributions of between $50,001 and $75,000 must pay an annual fee of $75.00. Those receiving between $75,001 and $100,000 must pay an annual fee of $100.00. And those receiving over $100,000 must pay an annual fee of $200.00. *Id.* Contributions for purposes of this law include those contributions solicited from anywhere in the United States. (Def.Resp. to Int. No. 9).

Plaintiff, Center For Auto Safety, Inc., is a national consumer advocate organization that engages in numerous activities, the goal of which is to improve automobile safety, efficiency and quality. Plaintiff challenges the sliding-scale fee provision as violative of the First Amendment, the Commerce Clause and the Due Process Clause. It seeks a declaration that the provision is unconstitutional, injunctive relief to prevent the law from being enforced against it, and other relief.

Defendant is the Maryland Secretary of State, who has statutory responsibility for overseeing the enforcement of the Solicitation Law.

Before the Court are plaintiff's and defendant's motions for summary judgment. For the reasons stated in this Memorandum, the Court will DENY plaintiff's motion for summary judgment, and GRANT defendant's motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the moving party can show that "there is no genuine issue of material fact" and that he is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this case, the defendant, as the moving party, bears the initial burden of proof, and the Court must determine whether, viewing the evidence in the light most favorable to the plaintiff, "a fair-minded jury could return a verdict for the [plaintiff]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the movant makes this preliminary showing, the burden shifts to the opposing party to delineate, with supporting admissible evidence, an issue of material fact. A "mere scintilla of evidence in support of the plaintiff's position" shall not suffice. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## III. DISCUSSION

### A. The First Amendment Test

Plaintiff's first claim is that the fee provision violates the First Amendment to the United States Constitution. As a preliminary matter, the Court finds well-supported plaintiff's contention that "charitable solicitations are so intertwined with speech that they are entitled to the protections of the First Amendment." *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 959, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984). It is also true, however, that the solicitation of charitable contributions are undoubtedly subject to reasonable regulation. *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). While the exercise of Constitutionally protected activities may not be taxed, *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), it may be regulated. *Streich v. Pa. Com'n. on Charitable Organizations,* 579 F.Supp. 172 (1984). Nominal fees imposed to defray the costs of policing the activities in question are allowed. *Id.* The state bears the burden of showing that any regulation of such solicitations is narrowly drawn to serve a sufficiently strong subordinating interest that the government is entitled to protect.[1] *Schaumburg,* 444 U.S. at 636–37, 100 S.Ct. at 836.

It is not contested that the First Amendment extends to the type of solicitations in-

---

1. The Court notes that *Schaumburg* involved an outright ban on solicitations by charitable organizations that did not use at least 75 percent of their receipts for "charitable purposes." In the instant case, the challenged requirement is payment of a nominal fee, the stated purpose of which is to defray the costs of regulating charitable organizations pursuant to state law.

volved in the instant case. Thus, the issue for the Court to decide is whether the fee provision is both reasonable and narrowly drawn to further a substantial interest that the state is entitled to protect.

The substantial state interest in this case is protecting the public from fraud by regulating the charities that solicit it for funds. The importance of this interest is not challenged. What plaintiffs challenge is the relationship of the fee provision to this substantial state interest.

### B. Why The 1989 Fee Schedule Was Enacted

Before the enactment of the 1989 amendment to the Solicitation Law, the funds generated to regulate the compliance of charities with the law were inadequate to meet the task, and the process was subsidized by the taxpayers of the state of Maryland. Elson Decl., paragraphs 5, 6. For example, in 1987, the $9,150.00 generated was a mere fraction of what was necessary to meet this need.

The legislative record sheds light on the purpose of the 1989 fee provision. The Secretary of State's office justified the provision to the Governor's office on the ground that the moneys raised would approximate the cost of administering and enforcing the charitable organizations law. Elson Decl. paragraph 7 and Elson Exhibit 2. Then–Secretary of State Winfield Kelly also offered the same explanation of the purpose of the bill in his March, 1989 testimony before the Senate Judicial Proceedings Committee.[2] Elson Decl. paragraph 8 and Elson Exhibit 4.

Despite the fee schedule, the Court finds that the actual cost of carrying out the provisions of the Solicitation Law exceeds the amount of revenue generated by the fees.[3]

### C. The Maryland Fee Provision Is Tailored To Providing The Funds To Carry Out Its Purpose

■ The Court finds that the sliding-scale fee provision is a reasonable means of raising funds from charities consistent with the cost of monitoring them. This scheme raises approximately what is needed for Maryland to fund this policing effort. Additionally, it apportions the costs of monitoring between the charities on the basis of the state's expected cost of monitoring that charity.

Ms. Deborah Elliott's Declaration concerning her activities as a reviewer of the documents filed by charities is informative on the process by which registrations and annual reports are received and processed. She stated that the larger the charity, the more documentation it is required to file, and thus the longer it takes to review the documentation.[4] The Declaration of Alicia Moran, who also reviews the documents charities are required to file, also explains why larger charities have greater costs associated with monitoring them. For example, large charities generate a greater number of inquiries from donors and potential donors, including those

**2.** Secretary Kelly offered virtually the same testimony before the Constitutional and Administrative Law Committee of the House of Delegates earlier in 1989. In addressing the question of the sliding-scale fee, Secretary Kelly testified, on both occasions, that the new fee provision would calculate "a fair fee" which will generate income which approximates the cost to the state of administering and enforcing the charitable solicitations act.

**3.** Although plaintiff expresses concerns about defendant's recalculation of the costs of carrying out the Solicitation Law, the Court credits the Secretary of State's recalculation as a good faith effort to include the full range of administrative costs in this calculation.

**4.** The Declaration of Deborah Elliott establishes the following uncontroverted facts: 1) It takes more time to review the submissions of a charity with greater nationwide fundraising due to the additional paperwork which must be submitted by such an organization; 2) It takes more time to enter pertinent information into the Department's computer data bases for a charity with greater national fundraising; 3) Reviewing the submissions of a charity with greater fundraising also takes more time because of their more frequent use of professional fundraisers, which itself calls for additional review; and 4) Whether the charity raises the majority of its money in-state or out-of-state, the same nationwide data is recorded to be made available to interested persons.

from out-of-state.[5] Moran Supp.Decl., paragraph 3.

### D. *Summary on the First Amendment Issue*

The Court finds that: (i) the fee provision of the Solicitation Law was proposed and passed with the intent and justification that it would cover the expenses of administering the law; (ii) the fees involved raise part of, but do not exceed, the costs of administering the Solicitation Law; and (iii) the distinction between the fees for larger and smaller organizations is sufficiently tailored to the amount of work and expense required by the State to monitor and respond to inquiries relating to the organization in question. Therefore, this regulation of speech is reasonable, and does not violate the First Amendment.

### E. *Commerce Clause*

Plaintiff next challenges the provision as violating the Commerce Clause. Plaintiff correctly notes the tension in this area of the law. Specifically, there is the "distinction between the power of the State to shelter its people from menaces to their health or safety and from fraud, even when those dangers emanate from interstate commerce, and its lack of power to retard, burden or constrict the flow of such commerce for their economic advantage . . ." *Hood & Sons v. Du Mond*, 336 U.S. 525, 533, 69 S.Ct. 657, 662, 93 L.Ed. 865 (1949).

The Court begins by noting that there is no distinction in Maryland's Solicitation Law between the treatment of in-state and out-of-state charities. A Maryland-based charity which raises $50,000 must meet the same requirements and pay the same fees as a New York-based charity which raises $50,000

and wishes to solicit contributions in Maryland. Consequently, it is difficult to see how this provision places a burden on interstate commerce.

■ It is clear that the annual fee is not a tax on the receipts of charitable organizations. It is a fee calculated to meet the costs of the state in erecting a protective structure to protect people from unscrupulous organizations. The Court believes that the proper approach to examining the annual fee provided for in the Solicitation Law is to view it not as a tax on receipts generated by a constitutionally protected activity, but rather as a user fee for a service provided by the state.

The Court finds that the defendant has sufficiently established the nexus between the fees charged and the cost of operating the program, and has justified the varying fees by cost per level of fundraising, to establish that the fee is indeed not a tax but a user fee designed to fund a program that protects the state's citizens and benefits the charities subject to its provisions.[6]

■ The Court further notes that "it has never been required that a user fee be precisely calibrated to the use that a party makes of Government services." *United States v. Sperry Corp.*, 493 U.S. 52, 60, 110 S.Ct. 387, 393, 107 L.Ed.2d 290 (1989). The government need not justify with precision the cost of its services. *Id.* Rather, the user fee must be a "fair approximation of the cost of benefits supplied." *Massachusetts v. United States*, 435 U.S. 444, 463, n. 19, 98 S.Ct. 1153, 1165, n. 19, 55 L.Ed.2d 403 (1978) (upholding a flat registration fee assessed by the Government on civil aircraft). When user fees are applied to a large number of parties, it is possible that a user will be charged more or less than it would under a perfect user-fee system, but the Supreme

---

5. Ms. Moran's Supplemental Declaration notes that nationwide charities often provide their Maryland registration information in connection with their solicitations outside of Maryland, generating a fairly significant workload in responding to inquiries from out-of-state persons. This level of inquiry has no relation to the organization's operations in Maryland, but rather is more closely connected to the scale of the organization's fundraising on a national basis.

6. The legislative history of the sliding-scale fee provision includes testimony from numerous charitable organizations who testified as to the benefit they perceived for their organizations from the new statutory scheme. To give but one example, when the bill was before the legislature for consideration, United Way Community Services supported the bill because it extended "as many protections as possible to our donors as they exercise their right to give." Elson Exhibit 7.

**242**

Court has declined to impose a requirement that the government "give weight to every factor affecting appropriate compensation ..." *Id.* Therefore, the Court finds, as a matter of law, that the Maryland fee provision is in fact a user fee, not a tax, and does not burden interstate commerce, nor does it violate the commerce clause.

The law protects the welfare of persons solicited for contributions to charity. It offers no preferential treatment to in-state organizations.[7] Thus, the law does not violate the Commerce Clause.

#### F. *Due Process*

Plaintiff's final contention is that the fee provision violates the Due Process Clause. The essence of plaintiff's argument is that defendant is assessing them a fee for a service from which it derives no benefit.

■ The Court finds that plaintiff does in fact receive a benefit from the state of Maryland. The state reviews and accepts reports from charities, makes them available to the public, provides a public repository for questions and concerns about charitable fundraising organizations and gives the people of Maryland, as well as other states, a method by which to obtain information about and have confidence in those organizations which the state of Maryland has registered. The process protects legitimate charities and fosters charitable giving.

#### IV. *CONCLUSION*

For the reasons given in this Memorandum, the plaintiff's motion for summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED. An order will follow.

---

**7.** Plaintiff argues that the fee provision discriminates against out-of-state charities because it imposes a larger fee on organizations with larger receipts, and most such organizations are from outside the state of Maryland. The Court disagrees with the logic of this contention.